IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MANUEL ALFONSO | § | |
| MENDOZA-MENJIVAR | § | |
| | § | |
| *Petitioner*, | § | |
| | § | No. 1:25-CV-2060-DAE |
| v. | § | |
| | § | |
| BONDI, *et al.*, | § | |
| | § | |
| *Respondents*. | § | |

## ORDER

Before the Court is Petitioner Manuel Alfonso Mendoza-Menjivar's

("Petitioner") Amended Petition for Writ of Habeas Corpus under 28 U.S.C.

§ 2241, (Dkt. # 2), and Respondents' Response (Dkt. # 7).

The Court finds this matter suitable for disposition without a hearing.

After careful consideration of the parties' briefings and the relevant law, the Court

**GRANTS** the Amended Petition for Writ of Habeas Corpus (Dkt. # 2) for the

reasons that follow.

## FACTUAL BACKGROUND

Petitioner Mendoza-Menjivar is a citizen of El Salvador who is

currently detained at the T. Don Hutto Detention Center in Taylor, Texas.  (Dkt. # 2

at ¶ 7.)  In 2010, Petitioner entered the United States without inspection.  (Id. at ¶

12.)  Since then, he has been living in the United States continuously for over 15

1

years.  (See id.)  Petitioner is married and has two U.S. Citizen children, ages 5 and 1 years old.  (Id. at ¶ 13.)

On November 11, 2025, Petitioner was pulled over by an Elgin County deputy sheriff for a traffic violation.  (Id. at ¶ 14.)  After the deputy sheriff contacted Immigration and Customs Enforcement ("ICE"), ICE took Petitioner into custody and initiated removal proceedings against him.  (Id.)  Although Petitioner requested a bond hearing before an Immigration Judge, his request was denied based on Matter of Yajure-Hurtado, 29 I&N Dec. 216 (BIA 2025), and the Immigration Judge determined the Court lacked jurisdiction over a custody redetermination.  (Id. at 15; Dkt. # 1-1.)  Petitioner is thus being held without the opportunity for a bond hearing.  (Id.)

## PROCEDURAL HISTORY

On December 16, 2025, Petitioner filed a habeas petition, and shortly after, on December 18, filed an Amended Petition.  (Dkt. ## 1, 2.)  In the Amended Petition, Petitioner asserts that his detention without bond under the "mandatory detention" provision of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(2), violates the INA, the Administrative Procedure Act ("APA"), and his due process rights.[1]  (Dkt. # 2 at 11–19.)

---

[1] Petitioner also asks the Court to find that he falls within the Maldonado Bautista Bond Eligible Class, to the extent the Court concludes the class litigation is

Pursuant to this division's standing order, this case was referred to U.S. Magistrate Judge Mark Lane.  (Dkt. # 3.)  Judge Lane ordered Respondents Pamela Bondi, United States Attorney General; Kristi Noem, Secretary of the United States Department of Homeland Security; Sylvester Ortega, Field Office Director for Detention and Removal, U.S. Immigration and Customs Enforcement; and Charlotte Collins, Warden, T. Don Hutto Detention Center to show cause as to why Petitioner's Amended Petition should not be granted.  (Dkt. # 3.)  On January 6, 2026, this Court issued an order vacating the referral of this matter to Judge Lane.

Respondents Pamela Bondi, Kristi Noem, Todd M. Lyons, and Sylvester Ortega (herein, "Respondents")[2] timely filed a response, arguing that their invocation of § 1225(b)(2) to detain Petitioner without bond is both statutorily and constitutionally permissible.  (Dkt. # 7.)

LEGAL STANDARD

"A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law."  Buenrostro-Mendez v. Bondi, No. CV H-25-3726, 2025 WL 2886346, at *1 (S.D. Tex. Oct. 7,

_____

relevant.  (Dkt. # 7 at 22–23); see Maldonado Bautista v. Santacruz, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025).

[2] Respondent Collins, Warden of the T. Don Hutto Detention Center, has not joined the response.

2025) (internal citation and quotations omitted); 28 U.S.C. § 2241. The habeas petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." Villanueva v. Tate, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (internal citation and quotations omitted). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

## DISCUSSION

I.    Subject Matter Jurisdiction

As an initial matter, Respondents argue that the Court lacks jurisdiction to decide this case because 8 U.S.C. §§ 1252(g), (b)(9), and § 1225(b)(4) bar district court review of ICE's decision to detain Petitioner, the decision to commence removal proceedings, and any decision regarding the admission of a noncitizen. (Dkt. # 7 at 6.) The Court will address each provision in turn.

A.    8 U.S.C. § 1252(g)

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or

execute removal orders against any [noncitizen] under this chapter." 8 U.S.C.

§ 1252(g). The Supreme Court has emphasized that this section "applies only to

three discrete actions that the Attorney general may take: her 'decision or action' to

'*commence proceedings, adjudicate cases*, or *execute* removal orders.'" <u>Reno v.</u>

<u>Am.-Arab Anti-Discrimination Comm.</u>, 525 U.S. 471, 482 (1999) (emphasis in

original) (quoting 8 U.S.C. § 1252(g)). This language was not intended "to sweep

in any claim that can technically be said to 'arise from' the three listed actions of

the Attorney General." <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 294 (2018). Instead,

the provision is confined to "just those three specific actions themselves." <u>Id.</u>

(citing <u>Reno</u>, 525 U.S. at 482–83). Therefore, because Petitioner challenges the

lawfulness of his continued detention during the pendency of his removal

proceedings, § 1252(g) does not apply.[3] <u>Cardoso v. Reno</u>, 216 F.3d 512, 516–17

(5th Cir. 2000) ("[S]ection 1252(g) does not bar courts from reviewing [a

noncitizen] detention order, because such an order, 'while intimately related to

efforts to deport, is not itself a decision to "execute removal orders" and thus does

---

[3] Respondents have characterized Petitioner's challenge as one directed at "the decision to detain [Petitioner] in the first place." (Dkt. # 7 at 6.) They have argued that this challenge "arises directly from the decision to commence and/or adjudicate removal proceedings against [Petitioner][,]" which is "exactly the type of challenge <u>Jennings</u> referenced as unreviewable." (<u>Id.</u>) The Court finds this argument unpersuasive. Petitioner is not challenging the decision to detain him but rather his continued detention without bond. (<u>See</u> Dkt. # 2 at 2, ¶¶ 44, 47, 67.) Contrary to Respondents' claims, this falls outside the types of challenge § 1252(g) is explicitly limited to. <u>Jennings</u>, 583 U.S. at 294; <u>Cardoso</u>, 216 F.3d at 516–17.

not implicate section 1252(g).'"); <u>Santiago v. Noem</u>, No. EP-25-CV-361-KC, 2025

WL 2792588, at *3 (W.D. Tex. Oct. 2, 2025); <u>Pineda v. Noem</u>, No. SA-25-CA-

01518-XR, 2025 WL 3471418, at *2 (W.D. Tex. Dec. 2, 2025); <u>YENNIFER</u>

<u>VALERIA DAVILA MERCADO, Petitioner, v. TODD M. LYONS, Acting Dir. of</u>

<u>US ICE, et al., Respondents.</u>, No. 5:25-CV-1623-JKP, 2025 WL 3654268, at *3

(W.D. Tex. Dec. 11, 2025).

      B.    <u>8 U.S.C. § 1252(b)(9)</u>

      Next, § 1252(b)(9) states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove [a noncitizen] from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus . . . , or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).  According to Respondents, this provision deprives the

Court of jurisdiction because it consolidates all legal and factual challenges arising

from removal proceedings into a single petition for review of a final removal order

before the appropriate federal court of appeals.  (Dkt. # 7 at 6.)  Section

1252(b)(9), however, does not bar the court's review where a petitioner is not

"asking for review of an order of removal," "challenging the decision to detain

them in the first place or seek removal," or "challenging any part of the process by

which their removability will be determined."  <u>Nielsen v. Preap</u>, 586 U.S. 392, 402

(2019).  Here, Petitioner is not challenging his removal proceedings but rather his

continued detention without bond during the pendency of his removal proceedings.

Section 1252(b)(9) thus does not present a jurisdictional bar.  Id. at 399–400, 402

(concluding that § 1252(b)(9) did not strip the court of jurisdiction where

individuals challenged their detention without bond); Dep't of Homeland Sec. v.

Regents of the Univ. of Cal., 591 U.S. 1, 19 (2020) ("§ 1252(b)(9) does not present

a jurisdictional bar" where those bringing suit "are not asking for review of an

order of removal, the decision to seek removal, or the process by which

removability will be determined.").[4]

C.    8 U.S.C. § 1225(b)(4)

Finally, Respondents cite 8 U.S.C. § 1225(b)(4) as a potential bar.

Section 1225(b)(4) relates to an immigration officer's ability to challenge another

immigration officer's favorable determination of admissibility.[5]  The Court sees no

---

[4] Respondents cite SQDC v. Bondi, No. 25–3348 (PAM/DLM), 2025 WL2617973
(D. Minn. Sept. 9, 2025), for the proposition that §1252(b)(9) bars Petitioner's
claims.  (Dkt. # 7 at 6.)  Aside from that decision not being binding on this Court,
the SQDC court offers no reasoning in support of its conclusion.  Instead, the
SQDC court merely states that "[a]lthough [petitioner] contends that §
1252(b)(9) does not bar his claims because he is challenging his ongoing detention,
not the initial decision to detain him, this difference does not alter the Court's
conclusion" without further explanation.  SQDC, 2025 WL2617973, at *3.
Respondents have not explained why that analysis should govern here, and the
Court is not persuaded by it.

[5] Specifically, § 1225(b)(4) provides: "The decision of the examining
immigration officer, if favorable to the admission of any [noncitizen], shall be
subject to challenge by any other immigration officer and such challenge shall

relevance of this provision to cases like Petitioner's, nor does the Court find this provision precludes it from exercising jurisdiction.  Rojas v. Noem, No. EP-25-CV-443-KC, 2025 WL 3038262, at *2 (W.D. Tex. Oct. 30, 2025); Estupinan Reyes v. Warden Bobby Thompson, et al., No. SA-25-CA-01590-XR, 2025 WL 3654265, at *2 n.1 (W.D. Tex. Dec. 12, 2025).[6]

　　　　Accordingly, Respondents' jurisdictional challenges fail, and the Court has jurisdiction to consider Petitioner's claims.  Estupinan Reyes, 2025 WL 3654265, at *1 ("As a general matter, the Court has jurisdiction over Petitioner's habeas petition pursuant to 28 U.S.C. Sections 1331 and 2241."); see also Jennings, 583 U.S. at 293 ("We are required in this case to decide 'questions of law,' specifically, whether . . . certain statutory provisions require detention without a bond hearing.").

II.    The Merits of the Petition for Writ of Habeas Corpus

　　　　Having concluded that it has jurisdiction over Petitioner's claims, the Court turns to the merits of Petitioner's habeas petition.  In his Petition, Petitioner

---

operate to take the [noncitizen] whose privilege to be admitted is so challenged, before an immigration judge for a proceeding under section 1229a of this title."
[6] To the extent that Respondents intended to refer to 8 U.S.C. § 1252(b)(4), a provision that discusses the scope and standard of review for orders of removal, the Court finds nothing in that provision that bars its jurisdiction here.  Cardona-Lozano v. Noem, No. 1:25-CV-1784-RP, 2025 WL 3218244, *2 (W.D. Tex. Nov. 14, 2025) (concluding that "[b]ecause Petitioner does not assert a challenge to an order of removal, nothing in [§ 1252(b)(4)] bars Petitioner from seeking relief from his continued detention in this case").

claims that Respondents lack statutory authority to detain him without a bond hearing and are violating his constitutional rights by doing so.  (See Dkt. # 2.) Because the Court agrees with Petitioner's statutory argument, it does not reach his constitutional or APA claims.[7]

Petitioner's statutory challenge to his ongoing detention turns on whether 8 U.S.C. §§ 1225(b)(2) or 1226(a) applies in his case.  Section 1225(b)(2), often referred to as the "mandatory detention statute," provides that a noncitizen "who is an applicant for admission" "shall be detained for a removal proceeding" "if the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted."  8 U.S.C. § 1225(b)(2)(A).  "Individuals detained under § 1225(b)(2) receive no bond hearing and can only be released on humanitarian parole at the arresting agency's discretion." Cardona-Lozano, 2025 WL 3218244, *3 (citing Jennings, 583 U.S. at 288).  On the other hand, § 1226(a), the "discretionary detention statute," allows for release on bond and provides 'procedural protections that are not afforded under the mandatory detention statute, such as the right to a bond re-determination hearing in front of an Immigration Judge and a right to appeal any custody determination." Buenrostro-Mendez v. Bondi, No. CV H-25-3726, 2025 WL

---

[7] The Court also does not reach the parties' arguments as to the effect of Maldonado Bautista in the instant case.

2886346, at *2 (S.D. Tex. Oct. 7, 2025) (quoting Chiliquinga Yumbillo v. Stamper, No. 2:25-cv-479, 2025 WL 2783642, at *2 (D. Me. Sep. 30, 2025)).  Section 1226(a) applies to noncitizens arrested and detained "[o]n a warrant issued by the Attorney General[.]"  8 U.S.C. § 1226(a).

"The Department of Homeland Security's 'longstanding interpretation' had been that § 1226, not § 1225, applies to noncitizens like [Petitioner] who are already present in the country."  Buenrostro-Mendez, 2025 WL 2886346, at *2 (quoting Savane v. Francis, No. 1:25-CV-6666-GHW, 2025 WL 2774452, at *5 (S.D.N.Y. Sept. 28, 2025)).  However, in July 2025, DHS changed its position.  Id.  In a memo sent to all ICE employees, DHS announced that noncitizens already present in the country who had not been admitted were to be "treated in the same manner that 'arriving [noncitizens]' have historically been treated," that is, subject to mandatory detention under § 1225(b)(2).  Maldonado Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *5 (D. Nev. Sept. 17, 2025); Cardona-Lozano, 2025 WL 3218244, *6.  The Board of Immigration Appeals ("BIA") adopted this new interpretation in a decision issued on September 5, 2025.  Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). Specifically, the BIA held that the immigration judge "did not have authority over the bond request because [noncitizens] who are present in the United States without admission are applicants for admission as defined under . . .  8 U.S.C.

§ 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." <u>Id.</u> at 220.  As a result of these changes, "[t]he government now applies § 1225 to *all* applicants for admission." <u>Buenrostro-Mendez</u>, 2025 WL 2886346, at *2 (emphasis in original).

Petitioner asserts that <u>Matter of Yajure Hurtado</u> misinterprets the INA. (Dkt. # 2 at 12–15.)  He argues that, as is demonstrated by the statutory language, longstanding practice, and precedent, § 1226 "authorizes the detention of noncitizens in regular removal proceedings before an immigration judge," whereas § 1225(b)(2) applies to "recent arrivals seeking admission."  (<u>Id.</u> at ¶ 20–21.) Accordingly, because § 1225(b)(2) does not apply to people like Petitioner, who entered the U.S. without inspection and is not presently arriving into the United States, his detention under that provision is unlawful.  (<u>Id.</u> at ¶¶ 46, 64.) Respondents counter that Petitioner can be properly detained under § 1225(b)(2) because he is an "applicant for admission."  (Dkt. # 7 at 1.)  They argue that § 1225(b)(2) applies to anyone who, like Petitioner, is a noncitizen who was found to be present within the United States without ever having been admitted— regardless of how long such an individual has been present in the country.  (<u>Id.</u>)  To make this argument, Respondents have relied on § 1225(a)(1)'s definition of an "applicant for admission," which defines the term as a noncitizen "present in the United States who has not been admitted or who arrives in the United States."

8 U.S.C. § 1225(a)(1). Respondents have asserted that this language unambiguously covers individuals like Petitioner. (Id. at 2–3.) Therefore, because DHS has determined that Petitioner is "seeking admission" and is not clearly and beyond a doubt entitled to be admitted to the United States, he can be properly detained pursuant to § 1225(b)(2). (Id.)

This case does not present a novel question. Since July 2025, courts across the country have considered and repeatedly rejected Respondents' broad reading of § 1225(b)(2). See, e.g., Mboup v. Field Off. Dir. of New Jersey Immigr. & Customs Enf't, No. 2:25-CV-16882 (MEF), 2025 WL 3062791, at *1 & n.3 (D.N.J. Nov. 3, 2025) (collecting cases); Lopez-Campos v. Raycraft, 797 F. Supp. 3d 771, 784 & n.5 (E.D. Mich. 2025) (same); Vargas Bondi, No. SA-25-CV-1023-FB (HJB), 2025 WL 3300446, at *4 (W.D. Tex. Nov. 12, 2025), report and recommendation adopted sub nom. Vargas v. Bondi, No. SA-25-CV-1023-FB, 2025 WL 3300141 (W.D. Tex. Nov. 26, 2025) (same); Buenrostro-Mendez, 2025 WL 2886346, at *2, 3 (explaining that "[t]his case is one of a number of recent lawsuits filed challenging the federal government's authority to detain noncitizens during the pendency of removal proceedings under 8 U.S.C. § 1225(b)" and noting that "almost every district court to consider this issue" has rejected the Government's new interpretation). This Court reaches the same conclusion for several reasons.

12

First, Respondent's reading of § 1225(b)(2) conflicts with the plain language of the statute and established rules of statutory interpretation. By its terms, § 1225(b)(2) applies when three conditions are met: "(1) the person is an 'applicant for admission'; (2) the person is 'seeking admission'; and (3) an 'examining immigration officer determines' the person 'is not clearly and beyond a doubt entitled to be admitted.'" Estupinan Reyes, 2025 WL 3654265, at *3. "Multiple courts have read this 'seeking admission' requirement to mean a noncitizen present in the United States without admission who *has recently arrived and is actively seeking admission*, not a noncitizen who has been residing in the country for years." Cardona-Lozano, 2025 WL 3218244, *4 (emphasis in original); Rojas Vargas v. Bondi, No. 1:25-CV-01699-DAE, 2025 WL 3251728, at *3 (W.D. Tex. Nov. 5, 2025). This Court agrees with that interpretation. See 8 U.S.C. § 1101(a)(13) (A) (defining "admission" and "admitted" as referring to "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer"); Martinez v. Mukasey, 519 F.3d 532, 544 (5th Cir. 2008), as amended (June 5, 2008) ("Under th[e] statutory definition, 'admission' is the lawful *entry* of [a noncitizen] after inspection, something quite different, obviously, from post-entry adjustment of status." (emphasis in original)); Estupinan Reyes, 2025 WL 3654265, at *4 (explaining that petitioner who had

been in the country for decades was not seeking entry, much less lawful entry, and so could not be considered to be "seeking admission").

If, on the other hand, § 1225(b)(2) was intended to encompass all "applicant[s] for admission," irrespective of whether they are recent arrivals, as Respondents effectively contend, "there would be no need to include the phrase 'seeking admission' in the statute." Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 488 (S.D.N.Y. 2025). Such an interpretation therefore renders "seeking admission" meaningless and violates the rule against surplusage. Id.; Cardona-Lozano, 2025 WL 3218244, *4; Rojas Vargas, 2025 WL 3251728, at *3; Martinez v. Hyde, 792 F. Supp. 3d 211 (D. Mass. 2025) ("Respondents' selective reading of the statute— which ignores its 'seeking admission' language—violates the rule against surplusage and negates the plain meaning of the text.").

Although not asserted in this case, Respondents have previously taken the position that individuals like Petitioner are "seeking admission" merely because they were issued a Notice to Appear ("NTA"). See, e.g., Acosta-Balderas, No. 5:25CV1629-JKP, Dkt. # 6 at 3; Estupinan Reyes, No. 5:25CV1590-XR, Dkt. # 7 at 4. They argue that through the issuance of the NTA, DHS determined that Petitioner is a noncitizen "seeking admission." (Id.) The Court finds this argument unpersuasive. A Notice to Appear is issued when an individual is placed in removal proceedings. 8 U.S.C. § 1229(a). Petitioner's NTA states that he is in

removal proceedings because he is a noncitizen "present in the United States who has not been admitted or paroled." (Dkt. # 1-1 at 3.)  Nowhere in Petitioner's NTA is there a determination that he is "seeking admission." (Id.)  And the Court does not agree with Respondents' contention that simply because Petitioner is not seeking removal from the United States, he must be "seeking admission." Acosta-Balderas, No. 5:25CV1629-JKP, Dkt. # 6 at 3–4; Estupinan Reyes, No. 5:25CV1590-XR, Dkt. # 7 at 7; see Mukasey, 519 F.3d at 541, 544 (equating seeking "admission" with seeking "entry" and noting that "admission" is "something quite different, obviously, from post-entry adjustment of status").

Moreover, Respondents' interpretation would narrow § 1226 so drastically that it would rarely, if ever, apply.  Respondents have insisted that under their interpretation, § 1226(a) would still apply to noncitizens "within the interior of the United States who were once lawfully admitted but are now subject to removal from the United States under 8 U.S.C. § 1227(a)." Acosta-Balderas, No. 5:25CV1629-JKP, Dkt. # 6 at 4–5; Estupinan Reyes, No. 5:25CV1590-XR, Dkt. # 7 at 8–9.  For example, it would apply to noncitizens who were initially lawfully admitted but were then placed in removal proceedings after overstaying a visa. (Id.)  The broad language of § 1226(a), however, belies this interpretation.  See 8 U.S.C. § 1226(a); Cardona-Lozano, 2025 WL 3218244, *4.  Limiting the provision to visa overstays would be inconsistent with both its text and structure, and the

15

Court declines to do so.  See id.  And, as numerous courts have noted, "there is no indication that Congress intended § 1226 to be limited only to visa overstays. Indeed, there is nothing in the history or application of § 1226 to even remotely suggest that it was intended to have such a narrow reach."  Lopez Benitez, 2025 WL 2371588, at *8.  "As a result, a more natural way to read the plain language of these two statutory sections alongside one another is to read § 1226 as governing detention of noncitizens already residing in the United States and § 1225 as governing detention of recently arrived noncitizens who are actively seeking admission to the country."  Cardona-Lozano, 2025 WL 3218244, *4.

        This reading is bolstered by the Supreme Court's analysis in Jennings. Although the Supreme Court ultimately answered a different question than the one at bar here, they explained in that case that "U.S. immigration law authorizes the Government to detain certain [noncitizens] *seeking admission* into the country under §§ 1225(b)(1) and (b)(2).  It also authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)."  Jennings, 583 U.S. at 289 (emphasis added).  This discussion highlights that people like Petitioner are subject to detention under § 1226(a), not § 1225(b)(2).

        Recent decisions in this District have found additional support for this interpretation in legislative history, recent amendments, and longstanding agency

16

practice.  See e.g., Cardona-Lozano, 2025 WL 3218244, *5–6.  As discussed in

those decisions, §§ 1225(b)(2) and 1226 were enacted as part of the Illegal

Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996.  Pub.

L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583,

3009–585.  Contrary to Respondents' assertions, "[t]he IIRIRA left in place an

earlier distinction between noncitizens arrested in the interior of the country (not

subject to mandatory detention) and noncitizens stopped at the border (subject to

mandatory detention)."  Cardona-Lozano, 2025 WL 3218244, *5 (citing

Maldonado Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082,

at *4 (D. Nev. Sept. 17, 2025)); see H.R. Rep. No. 104-469, pt. 1, at 229 (1996);

H.R. Rep. No. 104-828, at 210 (1996) (Conf. Rep.); see also Rodriguez v. Bostock,

No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *23–24 (W.D. Wash. Sept. 30,

2025) (explaining why the IIRIRA's legislative history does not support

Respondents' arguments).

   In addition, earlier this year, § 1226 was amended by the Laken Riley

Act, Pub. L. No. 119-1, 139 Stat. 3 (2025).  The Laken Riley Act authorizes

mandatory detention for noncitizens charged with or convicted of certain crimes.

Id.  This Court concurs with the opinion in Cardona-Lozano that "[i]f all

noncitizens charged as inadmissible due to entry without inspection were already

subject to mandatory detention under § 1225(b)(2), it would make no sense for

Congress to have amended the statute to require mandatory detention for specific

subcategories of those individuals." 2025 WL 3218244, *5. The Court is not

convinced by Respondents' argument that their interpretation does not render the

Laken Riley Act superfluous simply because "redundancies are common in

statutory drafting." Acosta-Balderas, No. 5:25CV1629-JKP, Dkt. # 6 at 5;

Estupinan Reyes, No. 5:25CV1590-XR, Dkt. # 7 at 9. As the court noted in

Cardona-Lozano, Respondents' interpretation would not make merely a few words

meaningless but rather the entire amendment. 2025 WL 3218244, *5. The Court

declines to adopt such a reading.

   Finally, Respondents' interpretation flies in the face of longstanding

agency practice. See Loper Bright Enters. v. Raimondo, 603 U.S. 369, 386 (2024)

("[T]he longstanding practice of the government—like any other interpretive aid—

can inform a court's determination of what the law is."). For decades since the

passage of IIRIRA, "the agencies charged with interpreting and enforcing the INA

applied § 1226(a) to noncitizens like Petitioner, who entered the U.S. without

inspection and were apprehended while residing in the U.S." Vasquez, 2025 WL

2676082, at *4; see Cardona-Lozano, 2025 WL 3218244, at *6; Lopez-Arevelo v.

Ripa, No. EP-25-CV-337-KC, 2025 WL 2691828, at *7 (W.D. Tex. Sept. 22,

2025); Rodriguez, 2025 WL 2782499, at *24–26. Regulations promulgated after

IIRIRA's enactment by the Executive Office for Immigration Review ("EOIR")

explained this practice.  <u>Inspection and Expedited Removal of Aliens</u>, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination . . . The effect of this change is that inadmissible [noncitizens], except for arriving [noncitizens], have available to them bond redetermination hearings before an immigration judge, while arriving [noncitizens] do not. This procedure maintains the status quo . . . ").

As described previously, this approach shifted in July 2025, and in September 2025, the new interpretation of § 1225(b)(2) was adopted by the BIA. <u>Matter of Yajure Hurtado</u>, 29 I. & N. Dec. 216 (BIA 2025).  In <u>Loper Bright</u>, the Supreme Court clarified that the BIA's interpretation of the INA is not entitled to any deference by this Court.  603 U.S. at 412–13.  Instead, while an agency's decision "may help inform the Court's inquiry, it does so only to the extent of its 'power to persuade.'"  <u>Rodriguez</u>, 2025 WL 2782499, at *25 (quoting <u>Loper Bright</u>, 603 U.S. at 413, 402) (cleaned up).  However, when an agency's current position conflicts with its earlier pronouncements, as here, even the agency's "power to persuade" is diminished.  <u>Cardona-Lozano</u>, 2025 WL 3218244, at *6; <u>see</u> <u>Rodriguez</u>, 2025 WL 2782499, at *26 (discussing two unpublished decisions from 2023 where the BIA took the opposite position to that taken in <u>Matter of</u>

Yajure Hurtado); Cardona-Lozano, 2025 WL 3218244, at *6 (discussing a

precedential decision issued one month prior to Matter of Yajure Hurtado applying

§ 1226 to the detention of a noncitizen who had entered without inspection three

years before).

In recent months, courts across the country have repeatedly rejected

the BIA's novel interpretation of the INA.  See Buenrostro-Mendez, 2025 WL

2886346, at *3 ("As almost every district court to consider this issue has

concluded, 'the statutory text, the statute's history, Congressional intent, and

§ 1226(a)'s application for the past three decades' support finding that § 1226

applies to these circumstances."); Belsai D.S. v. Bondi, No. 25-CV-3682, 2025 WL

2802947, at *6 (D. Minn. Oct. 1, 2025) (calling the decisions a "chorus" of courts

rejecting respondents' interpretation of § 1225(b)(2)).  Those courts have time and

again found that petitioners who entered without inspection and have long resided

in the United States cannot be detained under § 1225(b)(2).  See id.; Cardona-

Lozano, 2025 WL 3218244, at *6.  This Court agrees with those well-reasoned

opinions.

Here, Petitioner entered without inspection and has been present in the

United States continuously for over 15 years.  For all of the reasons described

above and cited by other district courts, he cannot be said to be "seeking

admission" into the United States.  Accordingly, his detention without bond under

§ 1225(b)(2) violates the INA, and he is entitled to relief.[8] <u>Estupinan Reyes</u>, 2025 WL 3654265, at *4; <u>Davila Mercado</u>, 2025 WL 3654268, at *7; <u>see</u> <u>Vargas Bondi</u>, 2025 WL 3300446, at *5 (discussing why the appropriate habeas relief is release rather than a bond redetermination hearing); (Dkt. # 7 at 2) ("The only relief available to Petitioner through habeas is release from custody.").

As a final matter, "[a]lthough Petitioner invokes jurisdiction under 28 U.S.C. §§ 1331 and 2241 and seeks attorney fees, the Court treats the instant action solely as a habeas action under § 2241." <u>Davila Mercado</u>, 2025 WL 3654268, at *7.  Here, as in <u>Davila Mercado</u>, Petitioner has not specifically brought any non-habeas claim and has paid only the minimal habeas filing fee.  Accordingly, the Court denies any request for attorney's fees in this case.  <u>Id.</u>; <u>Aldana Perez v. Noem, et. al.</u>, No. SA-25-CA-01534-XR, 2025 WL 3654262, at *7 (W.D. Tex. Dec. 5, 2025); <u>Barco v. Witte</u>, 65 F.4th 782, 785 (5th Cir. 2023) (holding that the Equal Access to Justice Act does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions).

---

[8] "Absent an assertion by Respondents that they are detaining Petitioner under § 1226, the Court has no need to consider whether § 1226 is a valid basis for Petitioner's current detention." <u>Davila Mercado</u>, 2025 WL 3654268, at *6; <u>see also</u> <u>Estupinan Reyes</u>, 2025 WL 3654265, at *4.  Respondents do not anywhere assert that they are detaining Petitioner pursuant to § 1226, (See Dkt. # 7), and so the Court will not consider that provision as a basis for Petitioner's detention. <u>Estupinan Reyes</u>, 2025 WL 3654265, at *4.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** the Amended Petition for Habeas Corpus.  (Dkt. # 2.)  It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Manuel Alfonso Mendoza-Menjivar from custody, under conditions of release no more restrictive than those in place prior to the detention at issue in this case, to a public place by no later than **5:00 p.m. on January 14, 2026**.

2. Respondents must **NOTIFY** Petitioner's counsel by email (jmaldonado.law@gmail.com) of the exact location and exact time of Petitioner's release as soon as practicable and **no less than two hours before his release**.

3. Respondents are enjoined from further detaining Petitioner under the asserted detention authority, 8 U.S.C. § 1225.  If Petitioner is re-detained pursuant to 8 U.S.C. § 1226, all applicable procedures must be followed, including that he be afforded a bond hearing.

4. The parties shall **FILE** individual status reports no later than **6:00 p.m. January 15, 2026**, detailing their compliance with this Order.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, January 12, 2026.

_____
David Alan Ezra
Senior United States District Judge